**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION**

**JAMES RAMAGE,**

        **Petitioner-Defendant,**

                               **Civil Action No. 1:11-cv-77**

**v.**                             **Criminal Action No. 1:09-cr-61**

                               **(Judge Keeley)**

**UNITED STATES OF AMERICA,**

        **Respondent-Plaintiff.**

**AMENDED[1] REPORT AND RECOMMENDATION TO THE DISTRICT JUDGE
RECOMMENDING THAT THE DISTRICT COURT DENY PETITIONER'S MOTION
UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

## I.   INTRODUCTION

On May 5, 2011, Petitioner-Defendant James Ramage ("Petitioner") proceeding *pro se*, filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. (Civil Action No. 1:11-cv-77, ECF No. 1; Criminal Action No. 1:09-cr-61, ECF No. 96.) On May 19, 2011, the undersigned entered an Opinion/Report and Recommendation recommending that Petitioner's motion be dismissed without prejudice as premature because the United States Supreme Court had not yet ruled on his petition for a writ of certiorari. (Civil Action No. 1:11-cv-77, ECF No. 2; Criminal Action No. 1:09-cr-61, ECF No. 99.) By Order dated June 27, 2011, the Honorable Irene M. Keeley, United States District Judge, adopted the undersigned's Opinion/Report and Recommendation and denied Petitioner's motion without prejudice as premature. (Civil Action No. 1:11-cv-77, ECF No. 8; Criminal Action No. 1:09-cr-61, ECF No. 109.)

On August 1, 2011, Petitioner filed the instant Motion Under 28 U.S.C. § 2255 to Vacate,

---

[1] The purpose of this Amended Report and Recommendation is to consider Petitioner's Reply filed on March 29, 2012.

Set Aside or Correct Sentence by a Person in Federal Custody ("Petition" or "Motion"). (Civil Action No. 1:11-cv-77, ECF No. 13; Criminal Action No. 1:09-cr-117, ECF No. 114 ("Mot.").) On November 7, 2011, the undersigned Magistrate Judge entered an Order directing Respondent, the United States of America ("Respondent" or "Government"), to answer Petitioner's motion. (Civil Action No. 1:11-cv-77, ECF No. 18; Criminal Action No. 1:09-cr-61, ECF No. 118.) On November 17, 2011, before the Government filed its response, Petitioner filed a Motion for Leave of Court to Supplement § 2255 Pleadings ("Supplement to Motion"). (Civil Action No. 1:11-cv-77, ECF No. 20; Criminal Action No. 1:09-cr-61, ECF No. 120 ("Supp. Mot.".) By Order dated November 18, 2011, the undersigned granted Petitioner's motion to supplement. (Civil Action No. 1:11-cv-77, ECF No. 21; Criminal Action No. 1:09-cr-61, ECF No. 121.)

The Government responded on December 5, 2011. (Civil Action No. 1:11-cv-77, ECF No. 23; Criminal Action No. 1:09-cr-61, ECF No. 123 ("Resp.").) On December 14, 2011, Petitioner filed a Motion for Continuance, asking the Court to extend the time he had to respond to the Government's Response. (Civil Action No. 1:11-cv-77, ECF No. 26; Criminal Action No. 1:09-cr-61, ECF No. 126.) By Order dated December 15, 2011, the undersigned granted Petitioner's motion and provided him until January 31, 2012 to file his response. (Civil Action No. 1:11-cv-77, ECF No. 27; Criminal Action No. 1:09-cr-61, ECF No. 128.)

By Order dated January 11, 2012, the undersigned ordered the Government to answer Petitioner's Supplement to Motion. (Civil Action No. 1:11-cv-77, ECF No. 29; Criminal Action No. 1:09-cr-61, ECF No. 130.) On January 23, 2012, Petitioner filed a Motion for a Second Extension of Time to File Reply (Civil Action No. 1:11-cv-77, ECF No. 31; Criminal Action No. 1:09-cr-61, ECF No. 132), which the undersigned granted by Order that same day (Civil Action No. 1:11-cv-77,

ECF No. 33; Criminal Action No. 1:09-cr-61, ECF No. 134). The Government filed its response ("Supplemental Response") to Petitioner's supplemental motion on February 15, 2012. (Civil Action No. 1:11-cv-77, ECF No. 35; Criminal Action No. 1:09-cr-61, ECF No. 136-1 ("Supp. Resp.").)

On March 21, 2012, the undersigned entered a Report and Recommendation recommending that the District Judge deny and dismiss Petitioner's Motion. (Civil Action No. 1:11-cv-77, ECF No. 39; Criminal Action No. 1:09-cr-61, ECF No. 141.) On March 29, 2012, Petitioner filed a Motion for Leave to File an Oversized Brief. (Civil Action No. 1:11-cv-77, ECF No. 41; Criminal Action No. 1:09-cr-61, ECF No. 143.) Attached to this motion was Petitioner's Reply ("Reply") to the Government's Response. (Civil Action No. 1:11-cv-77, ECF No. 41-1; Criminal Action No. 1:09-cr-61, ECF No. 143-1 ("Reply").) On April 3, 2012, Petitioner filed a Motion To Request to File Reply Out of Time or, Alternatively, Construe Reply Motion as the Timely Objections to the Magistrate's Report and Recommendation. (Civil Action No. 1:11-cv-77, ECF No. 42; Criminal Action No. 1:09-cr-61, ECF No. 145.) By Order dated April 4, 2012, the undersigned granted both of these motions and noted that an Amended Report and Recommendation would be filed to take Petitioner's Reply into consideration. (Civil Action No. 1:11-cv-77, ECF No. 43; Criminal Action No. 1:09-cr-61, ECF No. 147.)

The undersigned now issues this Amended Report and Recommendation on Petitioner's motion without holding an evidentiary hearing. For the reasons stated below, the undersigned recommends that the District Judge dismiss Petitioner's Motion.

## II.   FACTS

### A.   *Conviction and Sentence*

On May 5, 2009, the Grand Jury indicted Petitioner in a one-count Indictment.  (Indictment, Criminal Action No. 1:09-cr-61, ECF No. 3.)  Petitioner was charged with being a felon in possession of a firearm, in violation of Title 18, United States Code, Sections 922(g)(1) & 924(a)(2). (*Id.*)

On June 25, 2009, Petitioner, through counsel Charles T. Berry, Esquire, filed a Motion to Suppress Evidence.  (Criminal Action No. 1:09-cr-61, ECF No. 13.)  In this motion, Petitioner moved the Court to suppress evidence seized through an alleged illegal search of his residence and an alleged illegal interrogation of Petitioner.  (*Id.* at 1.)  By Order dated June 29, 2009, Judge Keeley referred this motion to the Honorable John S. Kaull, United States Magistrate Judge.  (Criminal Action No. 1:09-cr-61, ECF No. 15.)  Magistrate Judge Kaull, in a Report and Recommendation/Opinion ("R&R") dated July 13, 2009, recommended that Petitioner's Motion to Suppress Evidence be denied.  (Criminal Action No. 1:09-cr-61, ECF No. 20.)  On July 21, 2009, Petitioner filed his objections to Magistrate Judge Kaull's R&R.  (Criminal Action No. 1:09-cr-61, ECF No. 25.)  The Government filed its response to Petitioner's objections on August 3, 2009. (Criminal Action No. 1:09-cr-61, ECF No. 30.)  Judge Keeley conducted an evidentiary hearing to address Petitioner's objections to the R&R on November 24, 2009 (Criminal Action No. 1:09-cr-61, ECF No. 53), and she entered an oral order adopting Magistrate Judge Kaull's R&R and denying Petitioner's Motion to Suppress (Criminal Action No. 1:09-cr-61, ECF No. 59).

On November 30, 2009, Petitioner signed a plea agreement in which he proposed to enter a conditional plea of guilty to Count One of the Indictment charging him with being a felon in

possession of a firearm, in violation of Title 18, United States Code, Sections 922(g)(1) & 924(a)(2).

(Plea Agreement, Criminal Action No. 1:09-cr-61, ECF No. 62.)  By entering a conditional plea of

guilty, Petitioner reserved the right to appeal the District Court's ruling on the suppression issues.

(*Id.*)  Petitioner waived his right to appeal and collaterally attack his sentence.  Specifically,

Petitioner's plea agreement contained the following language concerning his waiver:

> Mr. Ramage is aware that Title 18, United States Code, Section 3742 affords a
> defendant the right to appeal the sentence imposed.  Acknowledging all this, the
> defendant knowingly waives the right to appeal any sentence, with the exception of
> the appellate rights preserved in paragraph number one of this plea agreement, with
> a base offense level of twenty or lower under the U.S.S.G. (Or the manner in which
> that sentence was determined) on the grounds set forth in Title 18, United States
> Code, Section 3742, in exchange for the concessions made by the United States in
> this plea agreement. **The defendant also waives his right to challenge his sentence
> or the manner in which it was determined in any collateral attack, including,
> but not limited to, a motion brought under Title 28, United States Code, Section
> 2255.**  The parties have the right during any appeal to argue in support of the
> sentence.

(*Id.* at 3 (emphasis added).)

Petitioner appeared before Judge Keeley on December 10, 2009 to enter his conditional plea

of guilty. (Criminal Action No. 1:09-cr-61, ECF No. 61.)  At the time of his plea, Petitioner was 39

years old and had graduated from high school.  (Plea Hrg. Tr. at 5:5-11, Criminal Action No. 1:09-

cr-61, ECF No. 137.)  The Court asked Petitioner if he understood that he was giving up the right

to appeal any sentence with a base offense level of twenty or lower, with the exception that he was

reserving his right to appeal the district court's ruling on the suppression issues, and Petitioner

replied that he did.  (*Id.* at 12:23-14:1, 17:16-18:5.)  The Court also asked Petitioner if he understood

that he was giving up his right to file a habeas petition, and Petitioner replied that he did.  (*Id.* at

17:25-18:5, 22:1-7.) Petitioner affirmed that he and his counsel had discussed the ramifications of

the entire plea agreement.  (*Id.* at 14:9-17.)  The Court reviewed all the rights Petitioner was giving

up by entering a plea of guilty.  (*Id.* at 25:22-28:15.)  During the hearing, the Government presented the testimony of Greg Perry, Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, to establish a factual basis for the plea.  (*Id.* at 28:22-31:4.)  Petitioner did not contest Agent Perry's testimony.  (*Id.* at 31:5-7.)

After the Government presented Agent Perry's testimony, Petitioner advised the Court that he was guilty of Count One of the Indictment.  (*Id.* at 31:17-25.)  He again affirmed that he understood that he was preserving his right to appeal the legality of the search that recovered the firearm.  (*Id.* at 32:5-9.)  Additionally, Petitioner testified under oath that no one had attempted to force him to plead guilty and that his plea was not the result of any promises other than those in the plea agreement.  (*Id.* at 32:10-15.)  When asked, Petitioner acknowledged that his counsel had adequately represented him and that his counsel had not left anything undone.  (*Id.* at 33:2-7.)  At the conclusion, Judge Keeley determined that Petitioner's plea was made freely and voluntarily, that Petitioner was competent and capable of entering an informed plea, that Petitioner was aware of the consequences of his guilty plea "on the conditional basis," and that there was a basis in fact for his plea.  (*Id.* at 33:12-21.)  Petitioner did not object to the Court's finding.  By Order dated December 15, 2009, Judge Keeley accepted Petitioner's conditional plea of guilty.  (Criminal Action No. 1:09-cr-61, ECF No. 63.)

Petitioner appeared before Judge Keeley for sentencing on March 15, 2010.  (Criminal Action No. 1:09-cr-61, ECF No. 68.)  Judge Keeley sentenced him to 33 months imprisonment followed by a three-year term of supervised release.  (*Id.*)


**B.**     ***Direct Appeal***

Petitioner, by counsel Charles Berry, Esquire, filed a Notice of Appeal to the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") on April 6, 2010. (Criminal Action No. 1:09-cr-61, ECF No. 72.) On appeal, Petitioner "argue[d] that the district court erred in denying his motion to suppress because the entry was illegal, the initial taint of the illegal entry was not purged, and [he] expressly refused to consent to the search. *United States v. Ramage*, 417 F. App'x 292, 293, 2011 WL 915740, at *1 (4th Cir. Mar. 17, 2011) (per curiam). However, the Fourth Circuit affirmed Petitioner's conviction. *Ramage*, 417 F. App'x at 293, 2011 WL 915740, at *1. On May 31, 2011, the United States Supreme Court denied Petitioner's petition for a writ of certiorari. *Ramage v. United States*, 131 S. Ct. 2946 (2011).

## C. *Federal Habeas Corpus*

### 1. Petitioner's Motion

In his Motion, Petitioner alleges three claims. Specifically, Petitioner alleges the following:

1. I was arrested and charged based on evidence that was collected in violation of my 4th Amendment right.

2. I was eligible for a downward departure based on special offender characteristics for serving in the military.

3. At my sentencing, counsel refused to contest a two (2) point enhansment [sic].

(Mot. at 5-8.) For relief, Petitioner asks the Court to remove the two-point sentencing enhancement and reduce his sentence or consider a downward departure at a re-sentencing hearing. (Mot. at 13.)

In his Supplement to Motion, Petitioner alleges the following claims:

1. Factual innocent of obstructing justice [sic];

2. Counsel was ineffective under § 3C1.1;

3. Unconstitutional plea of guilty–ineffective assistance of counsel.

(Supp. Mot. at 1-3.)

**2. Government's Response**

In its Response, the Government has only addressed the three claims contained in Petitioner's Motion. Specifically, the Government asserts that Grounds Two and Three, the claims regarding Petitioner's sentence, cannot be raised in a § 2255 proceeding because "[c]laims regarding a district court's alleged misapplication of the sentencing guidelines generally cannot be raised in a § 2255 proceeding because such claims do not typically involve a miscarriage of justice." (Resp. at 3.) Furthermore, the Government argues that Petitioner cannot raise Ground One, the claim regarding a Fourth Amendment violation, in his Motion because this claim was previously raised and decided on direct appeal of Petitioner's conviction. (*Id.* at 4-5.)

In its Supplemental Response, the Government asserts that Petitioner's Motion should be dismissed because Petitioner waived his right to file a motion pursuant to § 2255 if his base offense level at sentence was twenty or below and because Petitioner's base offense level at sentencing was twenty. (Supp. Resp. at 2-4.) Furthermore, the Government argues that Petitioner's counsel was not ineffective for failing to argue against the two-level enhancement for obstruction of justice because the enhancement was warranted because of Petitioner's false testimony under oath regarding a material issue. (*Id.* at 5.) The Government also argues that Petitioner's claim that his guilty plea was unconstitutional is procedurally defaulted and that his plea was knowing and voluntary. (*Id.* at 6.) Finally, the Government alleges that it was able to prove the elements of the offense for Petitioner's conviction and that his claim regarding his counsel's failure to "subject the government case to a meaningful adversarial testing" is without merit because Petitioner's counsel filed a motion to suppress, "zealously pursued" the suppression issue, and negotiated a conditional

plea agreement for Petitioner.  (*Id.* at 6-7.)

### 3. Petitioner's Reply

In his Reply, Petitioner asserts that his claims of ineffective assistance of counsel allow him to "bypass the waiver" contained in his plea agreement and have his claims considered on the merits. (Reply at 2-3.)  Petitioner also argues that under *Kimmelman v. Morrison*, 477 U.S. 365 (1986), he can demonstrate that counsel "failed to put forth a fully meritorious Fourth Amendment argument that was available from the facts."  (*Id.* at 3.)  He also alleges that counsel failed to argue that the illegal entry into his home was not purged by consent.  (*Id.* at 9-12.)  Finally, Petitioner asserts that counsel failed to "investigate the facts" that would have established that he was telling the truth regarding a material matter and that the sentence enhancement for obstruction of justice was not warranted.  (*Id.* at 13-15.)

### D. Recommendation

Based upon a review of the record, the undersigned recommends that Petitioner's Motion be denied and dismissed from the docket because Petitioner has failed to meet the two prongs of *Strickland* to demonstrate any claims of ineffective assistance of counsel, because he is barred from raising his Fourth Amendment violation on collateral attack because it was previously decided during his direct appeal to the Fourth Circuit, and because his claim that he is actually innocent of obstructing justice is procedurally defaulted and without merit.

## III.   ANALYSIS

### A. Petitioner is Barred From Raising His Fourth Amendment Claim on Collateral Attack

As his first ground for relief, Petitioner asserts that he was arrested and charged based upon evidence collected in violation of his Fourth Amendment rights. (Pet. at 5.) Specifically, he alleges that on October 4, 2008, police came to his residence, entered without a warrant, and searched it without his consent. (*Id.*) In response, the Government asserts that Petitioner may not relitigate this claim on collateral review because he raised it during his direct appeal. (Resp. at 4.)

The Fourth Circuit has held that issues previously rejected on direct appeal may not be raised by prisoners in a collateral attack. *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976). In Petitioner's case, the issue of whether a Fourth Amendment violation occurred was previously decided during his direct appeal to the Fourth Circuit. *United States v. Ramage*, 417 F. App'x 292, 2011 WL 915740 (4th Cir. Mar. 17, 2011). The Fourth Circuit examined the record and determined that any taint from an illegal entry into Petitioner's residence was purged through Petitioner's wife's consensual conversations with officers and because of the investigation into a domestic disturbance. *Ramage*, 417 F. App'x at 294, 2011 WL 915740, at *1. Furthermore, the Fourth Circuit determined that it was not clear error for the District Court to determine that Petitioner did not expressly refuse to consent to entry into his residence. *Ramage*, 417 F. App'x at 295, 2011 WL 915740, at *2. Therefore, Petitioner may not now recast this claim under the guise of a collateral attack. In fact, Petitioner himself acknowledges that he raised this issue on direct appeal to the Fourth Circuit. (Mot. at 5.)

Petitioner appears to suggest that he tried to have his counsel file a "motion for dismissal for a 4th Amendment violation made by the police, but he refused." (Mot. at 5.) The undersigned notes that this allegation is simply untrue. As noted above, Petitioner, through counsel Charles T. Berry, Esquire, filed a Motion to Suppress Evidence. (Criminal Action No. 1:09-cr-61, ECF No. 13.) In

this motion, Petitioner moved the Court to suppress evidence seized through an alleged illegal search of his residence and an alleged illegal interrogation of Petitioner. (*Id.* at 1.) Therefore, the undersigned finds that Petitioner's counsel did file a motion addressing the alleged Fourth Amendment violations, and Petitioner's claim regarding these alleged violations is barred because he previously raised it on direct appeal. *Boeckenhaupt*, 537 F.2d at 1183.

**B.** **Petitioner's Claims Alleging Ineffective Assistance of Counsel Have No Merit**

### 1. Standard Governing Claims of Ineffective Assistance of Counsel

The Supreme Court has set forth a two-prong test for determining whether a convicted defendant's claim of ineffective assistance of counsel warrants the reversal of his conviction. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, "the defendant must show that counsel's performance was deficient." *Id.* Second, "the defendant must show that the deficient performance prejudiced the defense." *Id.* These two prongs are commonly referred to as the "performance" and "prejudice" prongs. *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297 (4th Cir. 1992).

To satisfy the "performance" prong, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687. However, a reviewing court does not "grade" trial counsel's performance, and there is a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Carter v. Lee*, 283 F.3d 240, 249 (4th Cir. 2002). Essentially, the reviewing court must not "second-guess" counsel's performance and must "evaluate counsel's performance 'from counsel's perspective at the time.'" *Hunt v. Lee*, 291 F.3d 284, 289 (4th Cir. 2002). Furthermore, the standard of reasonableness is objective, not subjective. *See Strickland*, 466 U.S. at 688.

To satisfy the "prejudice" prong, the defendant must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. Therefore, if counsel's errors have no effect on the judgment, the conviction should not be reversed. *See id.* at 691. In the context of a guilty plea, a petitioner must demonstrate that there is a reasonable probability that but for his attorney's alleged mistakes, he would not have pled guilty and instead would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). The Fourth Circuit has recognized that if a defendant "cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." *Fields*, 956 F.2d at 1297.

The Fourth Circuit has set forth two categories of decisions made by trial counsel when analyzing ineffective assistance of counsel claims. First, there are "personal" decisions that require the defendant's consent, such as the decision to enter a guilty plea, the decision to waive a trial by jury, the decision to appeal, and the decision of whether to testify at trial. *Sexton v. French*, 163 F.3d 874, 885 (4th Cir. 1998) (citations omitted). The second category includes decisions that "'primarily involve trial strategy and tactics,' such as 'what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed." *Id.* (quoting *United States v. Teague*, 953 F.2d 1525, 1531 (11th Cir. 1992)). Accordingly, "[t]here is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." *Harrington v. Richter*, 131 S. Ct. 770, 790 (2011) (citations omitted) (internal quotation marks omitted).

> 2. **Petitioner Validly Waived His Collateral Attack Rights**

>> a. **Law Governing Waivers of Direct Appeal and Collateral Attack Rights**

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." *Blackledge v. Allison*, 431 U.S. 63, 71 (1877). However, the advantages of plea bargains are only secure when "dispositions by guilty plea are accorded a great measure of finality." *Id.* The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has recognized that the Government often secures waivers of both appellate and collateral attack rights "from criminal defendants as part of their plea agreement." *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005).

The Fourth Circuit has held that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is 'the result of a knowing and intelligent decision to forgo the right to appeal.'" *United States v. Attar*, 38 F.3d 727, 731 (4th Cir. 1994) (citations omitted). However, a defendant still retains the right to appellate review on limited grounds, such as when a sentence above the maximum penalty provided by statute is imposed or when a sentence is imposed based on a constitutionally impermissible factor. *Id.* at 732. Furthermore, the *Attar* court recognized that a defendant cannot "fairly be said to have waived his right to appeal his sentence" on the ground that he was wholly deprived of counsel during sentencing procedures. *See id.*

Eleven years later, the Fourth Circuit determined there was no reason to distinguish between waivers of appellate rights and waivers of collateral attack rights. *Lemaster*, 403 F.3d at 220 n.2. The Fourth Circuit noted that all courts of appeals to have considered the issue have "held that the right to attack a sentence collaterally may be waived so long as the waiver is knowing and voluntary." *Id.* at 220. The *Lemaster* court did not address whether the same exceptions that were

noted by the *Attar* court apply to a waiver of collateral attack rights, but it did note that it saw "no reason to distinguish" between the two. *Id.* at 220 n.2; *see also United States v. Cannady*, 283 F.3d 641, 645 n.3 (4th Cir. 2000) (collecting cases where the court has determined that waivers of § 2255 rights are generally valid).

The Fourth Circuit has not yet defined the scope of collateral attack waivers and so has not yet "defined the extent to which an ineffective assistance of counsel claim can be precluded by a § 2255 waiver." *Braxton v. United States*, 358 F. Supp. 2d 497, 502 (W.D. Va. 2005). However, several courts have held that collateral attack waivers should be subjected to the same conditions and exceptions applied to waivers of direct appellate rights. *Cannady*, 283 F.3d at 645 n.3 (collecting cases). Furthermore, most courts of appeals have determined that waivers of collateral attack rights encompass claims "that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver." *Braxton*, 358 F. Supp. 2d at 503.

### b.    Law Governing Whether a Waiver is Knowing and Intelligent

The Fourth Circuit has held that the determination of whether a waiver of appellate and collateral attack rights is "knowing and intelligent" "depends 'upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused.'" *Attar*, 38 F.3d at 731 (quoting *United States v. Davis*, 954 F.2d 182, 186 (4th Cir. 1992)). This determination is often made upon reviewing the "adequacy of the plea colloquy" and determining, in particular, "whether the district court questioned the defendant about the appeal waiver." *United States v. Blick*, 408 F.3d 162, 169 (4th Cir. 2005). However, an ultimate decision is "evaluated by reference to the totality of the circumstances." *United States v. General*, 278 F.3d

389, 400 (4th Cir. 2002).

### 3.  Petitioner's Claims of Ineffective Assistance of Counsel at Sentencing

#### a.  Petitioner's Claims Fall Within the Scope of His Collateral Attack Waiver

Petitioner has raised two claims of ineffective assistance of counsel at sentencing. In Ground Two of his Motion, he asserts that, according to the 2010 United States Sentencing Guidelines ("Guidelines"), he qualified for a downward departure for military service, but that his counsel failed to bring this to the Court's attention. (Mot. at 6.) In his Supplement to Motion, Petitioner states that counsel was ineffective under U.S.S.G. § 3C1.1 because counsel failed to contest the obstruction of justice enhancement. (Supp. Mot. at 2.) In Ground Three of his Motion, he alleges that counsel was ineffective because he refused to contest a two-point enhancement to his sentence.[2] (Mot. at 8.) Because these claims all allege ineffective assistance of counsel at sentencing, the undersigned will consider them together.

As noted above, a petitioner's claims of ineffective assistance of counsel at sentencing fall outside the scope of a collateral attack waiver only if the petitioner has been completely deprived of counsel. *See Lemaster*, 403 F.3d at at 220 n.2; *Attar*, 38 F.3d 732-33. "Claims that counsel was ineffective in failing to move for a downward departure do not suggest that the defendant was wholly deprived of counsel and, thus, such claims do not fall outside the scope of the collateral

---

[2] The undersigned notes that Petitioner's second ground in his Supplement to Motion appears to provide more detail to support Ground Three of his Motion rather than state a different claim of ineffective assistance of counsel. While he does not state in Ground Three of his Motion what the two-point sentence enhancement was for, Petitioner only received one sentence enhancement, and that was for obstruction of justice. (*See* Sentencing Hrg. Tr. at 7:12-13, 8:2-5, Criminal Action No. 1:09-cr-61, ECF No. 80.) Therefore, the undersigned will consider Ground Two in Petitioner's Supplement to Motion as support for Ground Three of his Motion.

attack waiver." *Nunez-Caro v. United States*, No. 7:07CV00207, 2007 WL 2439450, at *3 (W.D. Va. Aug. 23, 2007). For example, in *Lemaster*, the district court determined that Lemaster had waived his claims that counsel was ineffective for, *inter alia*, failing to request downward departures based on Lemaster's diminished capacity and deteriorating medical condition. *Lemaster*, 403 F.3d at 219 n.1. On appeal, the Fourth Circuit refused to reconsider these claims because "none of [these claims] relate[d] to the voluntariness of his plea agreement or waiver of collateral-attack rights." *Id.* at 219 (alterations in original). Furthermore, claims regarding sentence enhancements do not fall outside the scope of this waiver. *See, e.g., Millon v. United States*, Nos. 3:08cv338, 3:05cr341, 2009 WL 3258580, at *4 (W.D.N.C. Oct. 7, 2009) (finding that the waiver provision in the petitioner's plea agreement was an "absolute bar" to his claim that his sentence enhancement under U.S.S.G. § 2D1.1 was improper).

Here, Petitioner alleges that his counsel failed to request a downward departure for his military service and failed to contest the two-point sentence enhancement for obstruction of justice. (Mot. at 6-8; *see also* Supp. Mot. at 2.) These claims do not suggest that Petitioner was wholly deprived of counsel during sentencing proceedings, and so the undersigned finds that they fall within the scope of the collateral attack waiver contained in Petitioner's plea agreement. *See Millon*, 2009 WL 3258580, at *4; *Nunez-Caro*, 2007 WL 2439450, at *3.

Furthermore, the undersigned finds that Petitioner's waiver of his right to bring a motion pursuant to § 2255 is knowing and intelligent. *See Attar*, 38 F.3d at 731. At the Rule 11 plea colloquy before Judge Keeley, Petitioner testified that he received a high school education and that he did not have a disability or hearing impairment that would prevent him from participating in the hearing. (Plea Hrg Tr. at 5:7-12, 7:14-18.) Judge Keeley also specifically asked Petitioner if he

understood that he was giving up his right to appeal any sentence with a base offense level of twenty or below, with the exception that Petitioner was reserving the right to appeal the suppression issue, and to file a habeas petition, and Petitioner replied that he understood. (*Id.* at 12:23-14:1, 17:16-18:5, 17:25-18:5, 22:1-7.); *see also Blick*, 408 F.3d at 169. Petitioner also testified that he reviewed the plea agreement with his attorney before signing it. (*Id.* at 14:9-17.) At the end of the plea colloquy, Judge Keeley noted that Petitioner was competent and capable to enter a guilty plea, that he made his plea freely and voluntarily, and that he understood the consequences of his conditional guilty plea. (*Id.* at 33:12-17.)

In sum, the undersigned finds that Petitioner knowingly and intelligently waived his right to collaterally attack his sentence as part of his plea agreement. Furthermore, the undersigned finds that Petitioner's claims of ineffective counsel at sentencing fall within the scope of his collateral attack waiver. Therefore, the undersigned recommends that Petitioner's claims regarding ineffective assistance of counsel at sentencing be denied.

### b. Petitioner's Claims Have No Merit

Notwithstanding the fact that Petitioner waived his right to collaterally attack his sentence, Petitioner's claims of ineffective assistance of counsel are without merit. First, Petitioner cannot demonstrate that his counsel's failure to ask the Court for a downward departure based on Petitioner's military service falls outside the " wide range of reasonable professional assistance." *Carter*, 283 F.3d at 249. While Petitioner is correct that the 2010 Guidelines state that military service "may be relevant in determining whether a departure is warranted," U.S. Sentencing Guidelines Manual § 5H1.11 (2010), Petitioner was sentenced pursuant to the 2009 Guidelines, which state that military service is "not ordinarily relevant in determining whether a departure is

warranted," U.S. Sentencing Guidelines Manual § 5H1.11 (2009). The 2010 Guidelines did not become effective until November 1, 2010–approximately seven and a half months **after** Petitioner was sentenced by Judge Keeley. Therefore, Petitioner cannot demonstrate that his counsel was ineffective for failing to call attention to his military service because this service would not have been relevant in fashioning Petitioner's sentence.

Furthermore, Petitioner is unable to demonstrate that his counsel was deficient for failing to object to the two-level sentencing enhancement for obstruction of justice. In fact, Petitioner's counsel submitted three written objections to the Pre-Sentence Report regarding this enhancement. (Pre-Sentence Report ("PSR"), Addendum, Criminal No. 1:09-cr-61, ECF No. 81.) Written Objections #3, #4, and #5 stated, respectfully, "Mr. Ramage objects to the two level increase suggested by the Probation Officer," "There should be no adjustment for obstruction of justice," and "The adjusted Offense Level should be Level 17." (*Id.*) However, at sentencing, Petitioner's counsel decided to withdraw the objection to the enhancement so as not to put Petitioner's acceptance of responsibility at issue. (Sentencing Hrg. Tr. at 5:23-6:9.) U.S. Sentencing Guideline § 3C1.1 is designed to apply to those defendants who testify falsely under oath; for example, those defendants who provide "materially false information to a judge or magistrate." *See* U.S. Sentencing Guideline § 3C1.1 App. nn. 2, 4(f). Judge Keeley stated that her intention would have been to overrule the objection anyway because of Petitioner's "false testimony about a material matter concerning [his] interaction with the police officers on the occasion of the search of his [home]." (*Id.* at 6:12-13, 7:13-15 (alterations in original).) Counsel's decisions regarding objections are classic examples of objectively reasonable trial strategy. *See Humphries v. Ozmint*, 397 F.3d 206, 234 (4th Cir. 2005).

In his Reply, Petitioner asserts that counsel was ineffective in his handling of the obstruction of justice sentencing enhancement because he "did not investigate the facts that could have established Ramage was telling the truth." (Reply at 14.) Specifically, Petitioner alleges that counsel failed to call available witnesses, such as "Jenny" at the Bulletin Board news in Fairmont, West Virginia and Mr. Walter Colley, to provide support for the assertion that Petitioner bought the firearm from an advertisement in the Bulletin Board newspaper. (*Id.* at 14-15.) Petitioner also argues that counsel told him that he knew someone who could perform a handwriting analysis of the signature on the written statement to the ATF, but that counsel never produced a report or credentials from this individual. (*Id.* at 14.)

The *Strickland* Court recognized that counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *Strickland*, 466 U.S. at 690; *see also Coles v. Peyton*, 389 F.2d 224, 226 (4th Cir. 1968) (attorneys must "conduct appropriate investigations, both factual and legal, to determine if matters of defense can be developed"). The decision of "whether to call a defense witness is a strategic decision" that must be afforded "'enormous deference.'" *United States v. Kozinski*, 16 F.3d 795, 813 (7th Cir. 1994) (quoting *United States v. Hirschberg*, 988 F.2d 1509, 1513 (7th Cir. 1993)). However, the *Strickland* Court also emphasized that "a particular decision not to investigate must be assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. "Complaints of ineffective assistance of counsel based upon 'uncalled witnesses' are not favored in federal habeas corpus review because mere unsupported allegations about what testimony potential witnesses might have given are far too speculative." *Talley v. United States*, Nos. 1:06-cv-74, 1:94-cr-118, 2006 WL 3422997, at *9 (E.D. Tenn. Nov.

26, 2006). Furthermore, the Fourth Circuit has held that conclusory allegations concerning what exculpatory testimony would have been presented "are insufficient to establish the requisite prejudice under *Strickland*." *United States v. Terry*, 366 F.3d 312, 316 (4th Cir. 2004).

Here, while Petitioner has identified "Jenny," Mr. Walter Colley, and a handwriting analyst, he has failed to "make an affirmative showing as to . . . the availability of the witness to testify, the details of what the uncalled witness would have testified to, and that the testimony of the uncalled witness would have produced a different, more favorable result at trial." *Talley*, 2006 WL 3422997, at *9. Petitioner has not provided any evidence to support his assertions, and therefore it was reasonable for counsel to not investigate these potential witnesses because "counsel has no duty to conduct an investigation for its own sake in the absence of plausible indications that it might bear fruit." *Harris v. United States*, Nos. 5:03 CV 23 3 V, 5:06 CR 5 V, 2006 WL 322609, at *5 (W.D.N.C. Feb. 9, 2006). Furthermore, at a motions hearing before Judge Keeley, Petitioner's counsel represented that he had in fact discussed the report from the handwriting expert with Petitioner. (Nov. 16, 2009 Mot. Hrg. Tr., Criminal Action No. 1:09-cr-61, ECF No. 78 at 31:14-33:2.) Therefore, Petitioner cannot establish that his counsel was ineffective in failing in his handling of the two-point enhancement for obstruction of justice applied to Petitioner's sentence.

Petitioner also asserts that counsel was ineffective in his handling of the two-point sentencing enhancement because Petitioner told his counsel that he did not want to testify at the hearing held on his motion to suppress on July 6, 2009. (Reply at 14.) However, at the November 16, 2009 motions hearing before Judge Keeley, Petitioner stated that he had wanted to testify. (Nov. 16, 2009 Mot. Hrg. Tr. at 49:13-17.) However, Petitioner's counsel advised that Petitioner, after receiving counsel and advice, made the decision not to testify. (*Id.* at 49:20-52:23.) Given this, the

undersigned finds that Petitioner has not established actual prejudice and that his counsel was ineffective in handling the two-point sentencing enhancement.

Even if Petitioner's counsel's performance during sentencing was deficient in some way, Petitioner was not so prejudiced that his Sixth Amendment rights were infringed upon. Here, Petitioner does not allege that he would have gone to trial but for his counsel's alleged errors, and he failed to voice any concerns about his counsel's performance during sentencing. *See Hill*, 474 U.S. at 58-59. Instead, Petitioner only contends that if his counsel would not have erred, he would not have received a two-level sentencing enhancement for obstruction of justice and would have received a downward departure based on his military service. However, this is insufficient to meet the *Strickland* standard. *See Fields*, 956 F.2d at 1297 (holding that a defendant who pled guilty and subsequently challenged his sentence on an ineffective assistance of counsel claim without demonstrating that but for counsel's errors he would not have pled guilty could not show actual prejudice). Therefore, the undersigned recommends that these two grounds be dismissed because not only did Petitioner validly waive them, but they fail to meet the two prongs of *Strickland*.

### 4. Petitioner's Claim Regarding Ineffective Assistance of Counsel and the Validity of His Guilty Plea

In his Supplement to Motion, Petitioner asserts for the first time that his guilty plea was unconstitutional. (Supp. Mot. at 3.) Specifically, Petitioner argues that his plea was unconstitutional because his counsel's "failure to subject the government case to a meaningful adversarial testing, left him to enter into a plea agreement to a crime supported by evidence obtained in violation of the Fourth Amendment." (*Id.*) Petitioner also alleges that his plea was unconstitutional because the Government could not establish the necessary elements to convict him of being a felon in possession of a firearm. (*Id.*)

A defendant's sworn representations made at a plea hearing "carry a strong presumption of verity" and "constitute a formidable barrier against any subsequent collateral proceedings." *Blackledge*, 431 U.S. at 74. Therefore, guilty pleas are not normally subject to collateral attack, but can be so challenged on the ground that the plea was not knowing or voluntary. *Bousley v. United States*, 523 U.S. 614, 621-22 (1998). A defendant may attack the voluntary nature of his plea by demonstrating that he received ineffective assistance of counsel. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). However, "in the absence of extraordinary circumstances, . . . allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" *Lemaster*, 403 F.3d at 221 (citations omitted).

The Government asserts that Petitioner's argument is procedurally waived because it was not raised during direct appeal. (Supp. Resp. at 6.) Typically, 28 U.S.C. § 2555 "will not be allowed to do service for an appeal." *Sunal v. Large*, 332 U.S. 174, 178 (1947). However, "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' . . . or that he is 'actually innocent.'" *Bousley*, 523 U.S. at 622 (internal citations omitted). Petitioner did not raise his ineffective assistance of counsel claims on direct appeal. Normally, Petitioner's claims would be barred absent a showing of cause and prejudice. However, claims of ineffective assistance of counsel not raised on direct appeal and raised on collateral attack do not require a "cause and prejudice" showing because these claims are more appropriately raised on collateral attack than on direct appeal. *See United States v. Richardson*, 195 F.3d 192, 198 (4th Cir. 1999).

Here, Petitioner claims that his plea was unconstitutional because he received ineffective

assistance of counsel for his counsel's alleged "failure to protect the rights secured by the Constitution against unlawful search and seizure." (Supp. Mot. at 3.) However, Petitioner's claim is simply without merit. As discussed above, Petitioner's counsel filed a Motion to Suppress Evidence. (Criminal Action No. 1:09-cr-61, ECF No. 13.) In this motion, Petitioner moved the Court to suppress evidence seized through an alleged illegal search of his residence and an alleged illegal interrogation of Petitioner. (*Id.* at 1.) Furthermore, Petitioner's counsel was successful in negotiating a conditional plea agreement for Petitioner which, if successful before the Fourth Circuit, would have resulted in a dismissal of the charges brought against Petitioner. (*See* Plea Agreement, Criminal Action No. 1:09-cr-61, ECF No. 62.) Therefore, Petitioner's assertion that he was forced to plead guilty because his counsel failed to "subject the government case to a meaningful adversarial testing" is simply untrue.

Furthermore, as previously discussed, Petitioner's plea was knowing and intelligent. At the Rule 11 plea colloquy, Petitioner testified that he reviewed the plea agreement with his attorney before signing it. (Plea Hrg. Tr. at 14:9-17.) Judge Keeley noted that Petitioner was competent and capable to enter a guilty plea, that he made his plea freely and voluntarily, and that he understood the consequences of his conditional guilty plea. (*Id.* at 33:12-17.) Overall, Petitioner asserted his understanding of the consequences of his plea agreement throughout the Rule 11 colloquy. (*See id.* at 12-28.) Therefore, the undersigned finds that Petitioner's plea was valid.

Petitioner's assertion that the Government cannot prove the elements of the crime is without merit. Specifically, Petitioner alleges that the Government could not prove that he possessed the firearm found in his bedroom. (Supp. Mot. at 3-4.) Valid guilty pleas constitute admissions of the material elements of the crimes. *McCarthy v. United States*, 394, U.S. 459, 466 (1969). As

discussed above, Petitioner's guilty plea was valid and therefore served as an admission to the elements of the crime of being a felon in possession.

Additionally, at the suppression hearing held before Magistrate Judge Kaull on July 6, 2009, Special Agent ("SA") Ken Grace of the Bureau of Alcohol, Tobacco, Firearms and Explosives testified that after the discovery of the firearm, he interviewed Petitioner. Before this interview, he gave Petitioner his *Miranda* rights and Petitioner executed a *Miranda* waiver. (July 6, 2009 Supp. Hrg. at 125-129, Criminal Action No. 1:09-cr-61, ECF No. 56.) At this interview, Petitioner informed SA Grace that he owned the firearm and had obtained it by trading crack cocaine for the firearm in Uniontown, Pennsylvania. (*Id.* at 130:8-15.) He also admitted that he had purchased and installed a scope on the firearm and had also purchased ammunition for the firearm. (*Id.* at 130:17-21.) Therefore, the record contains sufficient evidence to refute Petitioner's claim that the Government could not prove that he possessed the firearm.

In his Reply, Petitioner relies on *Kimmelman v. Morrison*, 477 U.S. 365 (1986) to assert that counsel was ineffective in litigating the Fourth Amendment claim. (Reply at 3.) Under *Kimmelman,* when a petitioner alleges that counsel was ineffective for "failure to litigate a Fourth Amendment claim competently," "the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman*, 477 U.S. at 375. Specifically, Petitioner asserts that counsel was ineffective for not arguing that the illegal entry into his home was flagrant. (*Id.* at 3-8.) He also alleges that counsel failed to argue that the officer's illegal entry into the home was not purged by Petitioner's wife's consent. (*Id.* at 9-12.)

To support his assertion that counsel was ineffective for not arguing that the illegal entry into

his home was a flagrant violation of his Fourth Amendment rights, Petitioner relies on the testimony of Jalysa Brooks. (Reply at 5-6, 7.) He also asserts that counsel was ineffective because Officer Gearde is racist and that it was not proven whether Officer Gearde was correct when he testified that there was a screen door on the front door of Petitioner's home. (*Id.* at 6-7.) The record reflects that Petitioner's counsel was not ineffective for failing to argue that the illegal entry was a flagrant violation. Indeed, in his objections to Magistrate Judge Kaull's R&R recommending that Petitioner's motion to suppress be denied, Petitioner's counsel explicitly stated that "Petitioner disagrees with the R&R insofar as Magistrate Judge Kaull found that the violation of Defendant's Fourth Amendment rights was not flagrant." (Def.'s Objections to Report and Recommendation, Criminal Action No. 1:09-cr-61, ECF No. 25 at 1.) Petitioner's primary general objection was that Magistrate Judge Kaull "summarily discredit[ed] the testimony of Melissa Ramage." (*Id.*)

Furthermore, Petitioner has not demonstrated how counsel was ineffective for failing to rely on the testimony of Jalysa Brooks. As noted above, Petitioner's counsel objected to the discrediting of Melissa Ramage's testimony. However, in his R&R, Magistrate Judge Kaull noted that he found Jalysa Brooks and Deputy Gearde to be more believable than Melissa Ramage with regards to the testimony that Melissa Ramage went back upstairs after Deputy Gearde left the residence the first time. (Report and Recommendation/Opinion, Criminal Action No. 1:09-cr-61, ECF No. 20 at 4-5 & n.4.) Petitioner has not demonstrated how counsel's alleged failure to rely on Jalysa Brooks' testimony establishes actual prejudice in his case. *See Kimmelman*, 477 U.S. at 375. Furthermore, Petitioner has not provided evidence to show how his claim that Officer Gearde is racist supports his Fourth Amendment claim, and the record demonstrates that counsel, when cross-examining Officer Gearde, intimated that there was no screen door on Petitioner's front door. (Report and

Recommendation/Opinion at 6 n.6.) Finally, counsel did object to Magistrate Judge Kaull's finding that Melissa Ramage's consent was not enough of an intervening circumstances to reach the conclusion that the evidence was acquired "sufficiently independent of the lawful invasion to purge any taint arising from the initial entry." ((Def.'s Objections to Report and Recommendation, Criminal Action No. 1:09-cr-61, ECF No. 25 at 2.)

In sum, Petitioner has not established that his guilty plea was invalid because his counsel rendered ineffective assistance. Not only did Petitioner's counsel zealously seek the suppression of evidence in Petitioner's case, but he also succeeded in negotiated a conditional plea agreement for Petitioner. Petitioner also asserted that he understood the consequences of his conditional plea during the Rule 11 colloquy. The record does contain evidence that the Government was able to prove that Petitioner possessed the firearm found in his bedroom. Finally, nothing in the record suggests that Petitioner's counsel was ineffective under *Kimmelman* in his presentation of the Fourth Amendment claim. Indeed, in her Order denying Petitioner's *pro se* motion to withdraw counsel, Judge Keeley found that counsel "had carefully researched and analyzed the possible defenses available to Ramage and had zealously filed motions on his behalf, including a pending motion seeking to suppress." (Order, Criminal Action No. 1:09-cr-61, ECF No. 43.) Therefore, the undersigned recommends that this claim be dismissed because Petitioner has not met his burden under the two prongs of *Strickland*.

### C.    *Petitioner's Claim of Being Factually Innocent of Obstructing Justice Is Procedurally Defaulted and Without Merit*

As his first claim in his Supplement to Motion, Petitioner asserts that he is factually innocent of obstructing justice. (Mot. Supp. at 1.) Specifically, Petitioner asserts that the Court determined that he obstructed justice based on "his constitutional right to testify on his own behalf." (*Id.*)

Furthermore, Petitioner asserts that he is innocent of the enhancement because U.S. Sentencing Guideline § 3C1.1 Application Note 2 provides that the enhancement should not be used to punish defendants for exercising their constitutional rights. (*Id.* at 2.) However, the undersigned recommends that this claim be dismissed because it is procedurally defaulted and without merit.

Typically, the failure to raise non-constitutional issues on direct appeal results in their being deemed waived in a § 2255 motion. *See United States v. Emanuel*, 869 F.2d 795, 796 (4th Cir. 1989). However, "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' . . . or that he is 'actually innocent.'" *Bousley*, 523 U.S. at 622 (internal citations omitted). To establish cause, a movant must demonstrate "something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." *United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999). Actual prejudice is then shown by demonstrating that the error worked to a petitioner's "'actual and substantial disadvantage,'" rather than just creating a possibility of prejudice. *See Satcher v. Pruett*, 126 F.3d 561, 572 (4th Cir. 1997) (quoting *Murray v. Carrier*, 477 U.S. 478, 494 (1986)). To establish actual innocence, a petitioner must show that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (citations omitted) (internal quotation marks omitted). Usually, a petitioner "must demonstrate actual factual innocence of the offense of conviction;" "this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." *Mikalajunas*, 186 F.3d at 494.

Here, even though he does not explicitly say so, Petitioner appears to assert that his procedural default should be excused because of his counsel's alleged ineffectiveness in failing to

contest the obstruction of justice enhancement.  However, as discussed above, Petitioner has failed

to establish that his counsel was ineffective in failing to continue to challenge the enhancement for

obstruction of justice, and so Petitioner has failed to establish cause for his procedural default.  *See*

*Smith v. Murray*, 477 U.S. 527, 535 (recognizing "that 'the mere fact that counsel failed to recognize

the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not

constitute cause for a procedural default'") (citation omitted).

Furthermore, Petitioner cannot demonstrate actual innocence to excuse his procedural

default.  The Fourth Circuit has determined that "actual innocence applies in non-capital sentencing

only in the context of eligibility for application of a career offender or other habitual offender

guideline provision."  *Mikalajunas*, 186 F.3d at 495.  If this were not so, the Fourth Circuit has

reasoned, "whenever a movant is prejudiced by the misapplication of a sentencing guideline and

does not raise the error on direct appeal, a federal court may nevertheless correct the error during

a § 2255 proceeding, entirely eliminating the cause portion of the cause and prejudice requirement."

*Id.* at 494-95.  Here, Petitioner's claim that he is factually innocent of obstructing justice under

U.S.S.G. § 3C1.1 does not involve a challenge to the application of a career offender or other

habitual offender guideline provision.  Therefore, Petitioner cannot demonstrate actual innocence

to excuse his procedural default.

Even if Petitioner had not procedurally defaulted his claim, his claim is without merit.  U.S.

Sentencing Guideline § 3C1.1 is intended to apply to situations such as the one in Petitioner's case.

Two examples of conduct to which this enhancement applies are when a defendant provides

"materially false information to a judge or magistrate" and when a defendant commits perjury.  U.S.

Sentencing Guideline § 3C1.1 App. nn.4(b), (4)(f).  While Petitioner is correct that this enhancement

should not be used to "punish a defendant for the exercise of a constitutional right," U.S. Sentencing Guideline § 3C1.1 App. n. 2, it is still meant to apply when a defendant testifies falsely under oath. The Supreme Court has defined perjury for purposes of § 3C1.1 as "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993). "Under *Dunnigan*, 'it is preferable for a district court to address each element of the perjury in a separate and clear finding[,]' . . . but it is sufficient if the district court makes a determination 'that encompasses all of the factual predicates for a finding of perjury.'" *United States v. Maldonado*, 420 F. App'x 285, 288, 2011 WL 1188700, at *2 (4th Cir. Mar. 31, 2011) (internal citations omitted).

At sentencing, Judge Keeley imposed a two-level enhancement for Petitioner's obstruction of justice based on her finding that he gave "false testimony about a material matter concerning [his] interaction with the police officers on the occasion of the search of [his] home." (Sentencing Tr. at 7:12-15 (alterations in original).) Furthermore, Judge Keeley found that Petitioner gave false testimony when he stated that he "did everything [he] could to tell the officers they were not welcome to enter without a warrant." (*Id.* at 7:23-24 (alteration in original).) Judge Keeley's determinations were based on her findings at the motions hearing held before her on November 24, 2009 that Petitioner's testimony regarding the search of his home was "totally lacking in credibility." (Nov. 24, 2009 Mot. Hrg. Tr. at 102:14-15, Criminal Action No. 1:09-cr-61, ECF No. 79.) At the end of the motions hearing, Judge Keeley found that Petitioner "has testified falsely under oath about material matters in this case relating to this search." (*Id.* at 104:20-21.) These findings are sufficient for a finding of perjury that warranted the application of the two-level enhancement for obstruction of justice to Petitioner's sentence. *See Maldonado,* 420 F. App'x at

288, 2011 WL 1188700, at *2. Therefore, the undersigned recommends that Petitioner's claim of actual innocence be dismissed because it is procedurally defaulted and has no merit.

## IV.   RECOMMENDATION

Based upon a review of the record, the undersigned recommends that Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Civil Action No. 1:11-cv-77, ECF No. 13; Criminal Action No. 1:09-cr-61, ECF No. 114) be **DENIED** and **DISMISSED** because Petitioner has failed to meet the two prongs of *Strickland* to demonstrate any claims of ineffective assistance of counsel, because he is barred from raising his Fourth Amendment violation on collateral attack because it was previously decided during his direct appeal to the Fourth Circuit, and because his claim that he is actually innocent of obstructing justice is procedurally defaulted and without merit. The undersigned further recommends that the Report and Recommendation entered March 21, 2012 (Civil Action No. 1:11-cv-77, ECF No. 39; Criminal Action No. 1:09-cr-61, ECF No. 141) be **VACATED**.

Within **fourteen (14) days** after being served with a copy of this amended report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Court directs the Clerk of the Court to provide a copy of this Amended Report and

Recommendation to all counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. The Court further directs the Clerk of the Court to mail a copy of this Amended Report and Recommendation to the *pro se* Petitioner James Ramage.

**DATED:** April 16, 2012

DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE